Good morning, your honors. My name is Matthew Gunn, and I represent the appellant, Johannes Claus. And I would like to reserve six minutes, if at all possible, ideally. We'll see how it goes. I appreciate that. Thank you, your honor. Your honors, the district court below erred in granting summary judgment in favor of Canyon County. Your honors, this is not a highly technical appeal. This is not one that turns on, I think, a lot of nuanced legal argument. Rather, it presents a simple question of whether there exists genuine disputes of material fact based on the summary judgment standard of review that we're all familiar with, precluding the entry of summary judgment in favor of Canyon County. This appeal boils down simply to the premise, I believe, that because reasonable minds can disagree regarding the conclusion... What material fact is there in evidence, Mr. Gunn, that the purpose and intent in firing your client was based on his claims of military service? Fair question, your honor. I think that we need to look at the jumping-off point of December 12, 2017. That is when my client undisputedly engaged in protected activity, activity protected under USERRA, the Uniformed Services Employment and Reemployment Rights Act. On December 12, 2017, my client in good faith submitted a complaint to his employer, Canyon County, that he believed that the terms of his compensation, a term of his employment, a benefit of his employment, that he was being discriminated against on the basis of his military service. Because he wasn't being given credit for the prior military service. Correct, your honor. He wanted 13 years, right? He wanted all his JAG service time credited, your honor. There is some dispute about how many years, various amounts of that, but at the end of the day, it is undisputed that when Canyon County conducted its initial calculation, that it discredited at least some portion of his JAG service. Okay, but let's... How quickly did they give him what he asked for? Fairly quickly, your honor. They gave him what he asked for a few months later. We recognize that. And so did he get credit, all the credit that he requested, even though there had been some discussion that maybe not all his JAG time was directed at criminal law? That is correct, your honor. And we do not dispute the fact that Canyon County did make Mr. Kloss whole, including back pay, to their credit in January of 2018, after he made his complaints in December of 2017. Wasn't it only like days later that his boss went to bat for him and got it for him? The timeline of when his boss went to bat for him, I believe that's correct, your honor. I believe that the pay showed up at some point in mid-January, as far as when paychecks came out, so that's why I referenced the January date, but it was fairly quick. Well, he complains in December, and they grant him what he They fired him based on an incident that occurred on July 20th, and his termination was final in early August, your honor. So is it undisputed that he breached confidentiality? No, your honor. Is it undisputed that he breached confidentiality? I do not believe he did, your honor. No, and I thought, well, okay, but I thought that that was fairly undisputed on that point. And so my question is, did he show that the firing, I thought it was pretty much undisputed that what he did was wrong, but could he link it in terms of retaliation to his compensation grievance, and was that, does he have to show it was the reason, or only that it was a contributing factor? But I didn't think he said what he did was okay. Okay. Well, there's several different things in there. I will, I will quickly address the causation question, your honor. Our courts have routinely held that we are on motivating factor causation. We are not on sole but for causation. We are on motivating factor, need not be the only consideration in an adverse employment action. We are on motivating factor causation. And with regards to the witness list, your honor, there are several different issues involved in that. Yes, I do believe there is a genuine dispute of material fact as to whether or not he did anything wrong. He did not believe he did anything wrong, and there are a number of facts around that which need to be assessed by the jury on a full evidentiary record considering witness credibility with regards to the amended witness list issue. Canyon County never provided him any filing password. They never provided him any training regarding filing. They didn't have any policies and procedures in effect regarding after hours filing. He figured it out, but he did have a procedure that he should not file. He should not disclose the name of the two witnesses to anyone outside the office. True, whether or not that was a written policy or procedure. I am uncertain, your honor. I do know that those things that I just stated that they didn't have any policies or procedures for after hours filing, whether or not. But there was no, there's no dispute that he violated a rule of work when he made public, he made outside the office the disclosure of the two witnesses, right? I don't, I don't think it's as simple as that, your honor. First of all, Ms. Giannuzzi's testimony is that she never opened it. She never opened the witness list or looked at it, and so we don't know, and so there isn't. He made the witness list available to somebody outside the office. True. Yes, your honor. That is a true fact. I know if that if if that was sincerely held to be the reason why he was fired. Do you have any evidence of pretext that he's dealt with differently from other persons who have made a similar disclosures and have not been fired? You touched on a point there, your honor. I do want to address when you said if it was a genuinely held belief of Canyon County, whether or not it was a genuinely held belief, your honor, is an issue of fact. Is there any evidence that there is not sincerely held belief, whether it's correct or not? Your honor, we don't know. He's the only person that's ever been terminated in this office by this regime, and I think there are serious questions around this termination because we have Mr. Fucili, legal ethics expert, who clearly stated that this was not a breach of the Idaho rules of professional conduct. Confidentiality. Can you point out to any evidence to me that impugns a supervisor's belief that is this handling of the witness list of matter to professional misconduct? Is there any evidence of that? Yes, your honor. There's a real problem with this. In the deposition testimony, they are very clear, unequivocal. Mr Bozzoli and Mr James are unequivocal in their statements and testimony that they believe his conduct was criminal conduct, that that was a felony. They take this position over and over again and state this over and over again. They never filed a bar complaint. I don't believe that they genuinely believe. That seemed weird to me, that your client is claiming, well, you should have had me disbarred, not just terminated. And then if you had filed something with the bar, that would be evidence that, you know, like you should have done more than you did. But the judge and they they got some advice on whether they had to report him to the bar and determined that they didn't. But now he's faulting him saying, well, if it was really that bad, you should have reported me to the bar. You should have not only fired me, but you should have reported me to the bar and ruined my life forever. That just doesn't make sense to me. I understand the point you're making, your honor, and I think it's a fair one. But I think that this is where we get into genuine disputes of fact that have to be resolved by the jury, because there is an inference that can be drawn that the reason they didn't make a bar complaint, not that Mr. Kloss wanted a bar complaint, but that the reason they didn't is important. The reason is they didn't believe he'd actually done anything wrong. They weren't willing to sign their name to a bar complaint. They weren't willing to, quote, put their money where their mouth is. They weren't willing to make those allegations because they didn't believe in them, because this was a pretextual termination. That is why that that inference. Not every time you fire an attorney do you have to make a bar complaint to to make out that you have grounds for firing an attorney, does it? Correct, your honor, but I would I would direct your honor to page 28 of Kenyon County's brief, where they say the only reason they fired him is because of the witness list issue. So I agree with you that not every time does an attorney is fired as a bar complaint have to be made, but they are hanging their hat on the fact that this was the only reason he was fired, was the more than a reasonable inference. If it's undisputed that he did release the witness list, whether someone looked at it or not, it's undisputed that he got the raise that he asked for, then I guess the court just didn't feel that there that you had shown anything to show that his getting fired was related to his asking for 13 years of credit. Yes, your honor, I'd agree that that was the court rule, that is what the court ruled. I would I would submit that was erroneous for several reasons, and circling back to the timeline that you wished to discuss earlier, Judge Bea, I think we haven't touched on a very critical event, which was the transfer of the child protection docket, which occurred two months after he made the request. In my experience, there very much is, and this was testified to by Mr. Kloss in the record, the stepping stone for misdemeanor to felony to judgeship, this feeling that a jury needs to assess, needs to draw the inferences, need to listen to the witnesses as to whether or not they sidelined him two months after he made this request. And I do want to reserve some time for rebuttal, but the last thing I want to talk about, and I think your honors make a fair point when you question the fact that he was made whole, your honor, but there's that Japanese proverb that a rusty nail gets gets the credibility of the inference, that even though they made him whole, employers retaliate all the time against employees that they see as complainers, that they see as whiners, that they see as people who make these kinds of requests. And again, Mr. Kloss might or might not be able to win that at trial, but he has adduced enough evidence to earn himself a trial by the jury of his peers. Were there depositions taken of these people? Yes, your honor. And obviously I was in those depositions. My colleague here was in those definitions, depositions. Is there any, is there, is there evidence in those depositions that he was regarded as a whiner, that people didn't like him for that, or that there was a continuing animosity as a result of his fight for his military credit? There certainly is, your honor. There's extensive record evidence, largely in the form of deposition testimony by Mr. Kloss, that after he made this complaint, that Mr. James, the deputy, constantly referred to him as a 14-year attorney. And Mr. James admitted in his deposition that Mr. Kloss was the only attorney in the office that he knew as years of service. So clearly that complaint had stuck in his mind. And there's deposition testimony by Mr. Kloss that repeatedly Mr. James would refer to him as if, aren't you a 14-year attorney? Why are you doing this? You're a 14-year attorney. Belittling him after he made that complaint, Mr. James' extensive deposition testimony, that he was singled out for minor offenses. Again, these are all issues that he might or might not be able to prevail on a trial, but they are issues on which a jury could find in his favor. He was belittled, he was denigrated, he was singled out, he was sent to the child protection docket, and there are significant pretext questions surrounding the termination of his employment. Okay, thank you. Thank you, your honor. All right, we'll reserve the balance of your time for rebuttal. Good morning. Good morning, your honor. Sorry. Good morning, your honors, and may it please the court. My name is Benjamin Kramer, and I am appearing on behalf of defendant Appellee Canyon County. Canyon County asked this court to affirm that summary judgment for Canyon County was appropriate and proper in this matter. Simply put, there is no genuine issue of material fact as to whether Mr. Klaus's USERRA benefit request was a substantial or motivating factor in Mr. Klaus's termination eight months later. The district court did not invade the province of the jury or weigh credibility as to which evidence is to be believed, but the plaintiff did fail to create a genuine issue of material fact through evidence as to whether his request for a USERRA benefit motivated her termination. Mr. Kramer, as I understand the facts, Mr. Klaus came into knowledge of these two extra witnesses after filing time had closed at 4 30 p.m., right? That's what he says. I believe yes, your honor. I think that... Being a dutiful counsel, he wanted to make sure that the two names appeared on the witness list. What was he supposed to do other than what he did? Your honor, through the deposition testimony in the record, Mr. Klaus had the phone numbers of the chief public defender. He had the phone numbers of the deputy chief public defender. He had email access to opposing counsel, and there's at least some two opposing... It can always go a woulda, coulda, shoulda, but anyway, it's basically undisputed that it was a last minute type of thing. He was really concerned. He didn't want to compromise the case. So, and I think his counsel noted that apparently it wasn't, no one actually saw that. So why couldn't we, why wouldn't a jury look at it and say, you know, it's like you were just hogging this guy, you know? I mean, for, you know, and everyone's seen situations where when you don't like someone, you write them up for everything or, you know, calling them 14 years or that, you know, there aren't many people that say, hey, yippee, I got sent to dependency court. You know, we all sort... I think that's the court he went to, and it's the dreaded assignment for most people. So it looks like this guy, you know, why can't you make an argument? You know, he just didn't really fit in, you know? I mean, okay, I've worked for the public defender early in my career, then I was a prosecutor, and, you know, some people fit in better than others, and if you really want to dog someone, you can do it. So he was a jag, and then he kind of complained, and then they call him, you know, they call him 14 year after that. Then he goes out to work, and then it looks like he got... It doesn't look like he did the worst thing that I've ever seen anyone do, and he gets fired. So weren't they just lying in wait for him, waiting for him to make that mistake that anyone knows as a lawyer or a judge, we probably make numerous mistakes every day, and what I say, may all your mistakes be harmless, you know? That's the... Not because we're not going to make them. Why isn't that a possible way to look at this scenario? Why isn't he entitled to try this in front of a jury? Well, Your Honor, he has failed to put any facts into the record regarding that. Well, but you can take inferences from things. So he did put in... They called... I've never called anyone. I don't call them out and say like, hey, you, six year, hey, you, this. I mean, the 14 years clearly goes back to that he had military service, right? Well, Your Honor, I think, first of all, Mr. Klaus makes this broad statement that it happens many times without any specificity. There's been one indication... Well, but he's entitled at this stage to have that deemed true, correct? Yeah, and I do that... I do think that's fair. There's only one instance where there's been any facts around that 14 year comment, and it was in regards to a missed objection in July. And again, Mr. Klaus is a 14 year attorney. It's really unnotable that Mr. James remembers that Mr. Klaus is a 14 year attorney. This conversation happens on his second day in the job. And regarding Mr. Klaus's benefit request, it's not surprising that Mr. James recalls that and is, again, treating Mr. Klaus as though someone who has experience of the level that Mr. Klaus says he does. Mr. Kramer, can you enlighten me on the fact... Did anybody outside of the proper chain of knowledge ever learn the names of those two witnesses? For instance, Miss Gonzalez says she didn't open the envelope, right? Mm-hmm. So she says she didn't learn it. So was there any prejudicial effect, even hypothetically, on the case because of the late filing of the two witnesses? Because if not, it seems that one could infer that since he was complaining about his military service not being credited, they were looking for the first opportunity to get rid of him. And they got rid of him on a charge which didn't really harm anybody or harm the process. Well, Your Honor, first of all, Mr. Klaus has competing testimony about his intent about whether Mrs. Wilson, Miss Giussani was to open it. He both says that he didn't want her to open it, but also that he expected her to change the Certificate of Service, which necessarily requires it to be opened. You know, in terms of that, this is a sealed child custody matter, Your Honor. It's a sealed case. Well, it seems undisputed that he made a mistake. But if a reasonable jury could decide, yeah, you made a mistake, but it wasn't a big mistake, and you're just going after this guy for spitting on the sidewalk, because we don't have any other instances where that, I'm going to say that everyone in that office has made a mistake at one point or another. And, you know, there but for the grace of God go many of us. So why isn't he entitled to inferences from what he said that they were just, you know, he wasn't really fitting in and he was kind of a butt, and they, and he made a mistake. First of all, Your Honor, again, none of those facts connect this back to his December 2017 conversation. It's not like someone got killed as a result of what he did. It's not like he, it's undisputed that he was in a last-minute dilemma over, I want to be able to call the witnesses for my dilemma. Yes, you have pointed out there were other things he could have done. But what if a jury thought, well, but what he did wasn't that unreasonable? Well, again, Your Honor, I think that, first of all, a breach of confidentiality is a substantial matter. This is not spitting on the side. Well, is there a breach of confidentiality? To distribute a witness list and assigned child custody matter that has the, excuse me, a sealed child custody matter that has the... I shouldn't have seen it. The woman who filed it? Yes, Your Honor. Yes, Your Honor. And it's distributed outside the county systems to her email account. Like there is a whole chain of confidentiality expectations. And I would hope that as attorneys, confidentiality for our clients is a lapse in judgment, a significant lapse in judgment by Mr. Klaus when there were numerous other things, including there's record evidence that he spoke with opposing counsel, let him know that they were going to, or at least corresponded. And the opposing counsel said, that's fine. We're not going to dispute your amended witness list. File it on Monday. So there's, again, this is an unwise decision that violated county policy. And when taking the record as a whole, there is no connection between that and his USERRA benefit request. He has only shown that he made it... Sorry, Your Honor. I just wanted to ask what the record showed with respect to a point that Judge Callahan touched on as to the existence of disciplining any other attorneys for similar matters. What's the record? Your Honor, the record shows that Canyon County has never, at least Mr. Bozzoli, who has been in that position, I guess, about three years now, about two years at the time of his deposition, had never encountered a situation like this. And so there is no similarly situated individual. We have their testimony that this was a significant concern. It violated their office procedures. It violated Canyon County policy, and they acted in a way... Okay. Is there any record of anyone else being disciplined for anything in a manner like this? Not comparing the offenses, but just what does the record show with respect to whether the office consistently disciplined lawyers who they felt went outside the bounds of the standards? Well, I think the best record evidence of that is Mr. Klaus's himself, and you'll see from the record that at no time is Canyon County disciplining Mr. Klaus for all of these intervening conversations. They are coaching him up. Your Honor, the only reasonable inference there is that they want to keep him. They are trying to keep him and coach him up through these disciplinary issues. Your Honor, in the Canyon County Public Defender's Office, the child protection docket is not a sideline. That's very clear from the record. In fact, Mr. Klaus says that, you know, by putting me in child protection, I'm going to be sidelined. I'm not going to get a felony opportunity. And the person he points to who gets the felony opportunity just came off the child protection docket. I mean, it's very clear that that is not a sideline. Are you telling me people want to go to that child? Well, is it like, I'm only dealing anecdotally, but I've, you know, judges never take that call well that you're going to the dependency court. Well, again, I can understand that, you know, Canyon County had a conversation with Mr. Klaus. He didn't object to going there. He said he would be willing to go there. And again, the record shows that each time Canyon County was having conversations with Mr. Klaus, there is evidence here. There's either email correspondences or something that triggers the county having these conversations with Mr. Klaus. For instance, the move off of the misdemeanor docket. There's record evidence that the judge's clerk is frustrated with Mr. Klaus not showing up. And so Canyon County in the depositions indicated that they were trying to give him a chance to start over in front of a fresh judge and move to the child protection docket. Again, these are not the acts of someone who is seeking to discriminate. You have the causal break between resolving the issue in Klaus's favor. I mean, giving him more than he asked for, giving him years of service for unemployment, for serving as a mail clerk, completely unrelated. Well, I guess it's not really whether you win or not here on that, you know, it's whether a reasonable jury would have what can we say at the end of the day that no reasonable jury would find any tribal issue here, that no reasonable jury would find other than for the county. That's kind of the bottom line on a summary judgment. And I certainly understand that. Because you can always in employment cases, everyone can always make some sort of tribal issue because it's employments like marriage or other things. I mean, there's always people, there's always factual things that go on in the relationship. But the question is, can we say at the end of the day that no reasonable jury would find in his favor? Yeah, and your honor, the court has adopted the LASIK standard for the Sheehan v. Navy standard that says, here's how the plaintiff has the burden. Here's how they demonstrate some causal connection, some motivating factor between simple knowledge that plaintiff made a benefit request and an adverse action. And your honor, there is no factual evidence of that that connects the USERA request to the adverse termination. None of these intervening things were pled as an adverse action. He's not alleging that they were done based on his military service. And like, there's just no connection. It's after the fact that he says, well, maybe those were all kind of related. It must have been because of this request. And there just is no facts to that. And it is an unreasonable inference when you weigh all the facts in the record, your honor. All right. Thank you. Thank you. Mr. Gunn, I see that what you're claiming is that the lack of prosecution for a felony and the lack of making a bar complaint shows that the employer didn't really believe that this was this much of a deal, this much of a reason. And so from that, and you're putting together his complaints about not getting a military service, you say a jury could reasonably conclude that they were resentful about him having made the claim which resulted in them giving him his benefits. And they were looking for the first opportunity to get rid of him. That's your case. A jury could conclude that, right? Yes, your honor. If I may, I don't want to cut off the rest of the question. If I could also interject, I believe that contributing to the causal chain or the 14-year comments that go into the child protection docket, those are from December 12, 2017 to when he gets fired in August. There is, in my view, a continual chain in there when you add in those other factors and elements. One of those factors that he was given worse jobs at the office? That the transfer to the child protection docket is a sidelining. Even though it's not a dock and pay, that it's a sidelining and an adverse employment action in the sense of career detriment. The 14-year comments, I think, are significant, your honor. I think those are the kind of comments that we can't just discount, that they show some intent and link to the claim and the report to the claim in December of 2017 related to the discounting of the years. And so when you add all of this together, your honor, I think it's really easy. And employers always do this. I do a number of these cases. Frankly, I have a number of cases with co-counsel. And it's easy to look at things in isolation. It's easy to try to explain away things in isolation. But we need to look at the entire record. Is part of your claim that by moving into child protection, even though he had so many years of experience, he was being moved in where junior people would not be moved in? Is there any evidence of that? Your honor, there is. The facts surrounding that move, Mary Giggrey, who he replaced on the child protection docket, she had 10 years of service. She had less service. So she replaced him on the misdemeanor docket. She gets a felony docket shortly thereafter. That felony docket is not offered to Mr. Klaus. So she jumped directly from his misdemeanor docket to a felony and offer that wasn't made to Mr. Klaus. And I realize I'm out of time. I want to make two very brief points. Back to the witness list issue and the line of questioning that was directed at my colleague here. I asked Mr. Rizzoli and Mr. James in their depositions point blank. Can you articulate any prejudice that resulted from this witness list issue? The answer by both was unequivocally no. Can you articulate any what? Prejudice that resulted from this witness list issue. And the answer was unequivocally no. They could point to no prejudice that resulted from this. I submit that any member of that jury would want their attorney to do what Mr. Klaus did. Okay, you're over, so. I'm- Right at home. Very briefly, Your Honor, we touched on the standard of review and employment discrimination cases. And I understand Your Honor's point that inferences can be drawn in these cases, but that is what the Ninth Circuit has said. In Wallace versus J.R. Simplot, the Ninth Circuit has said that the evidentiary burden in employment discrimination cases is minimal. In Lamb versus Hawaii, the Ninth Circuit has said we require very little evidence to survive summary judgment. This is because employers don't put smoking guns out there. This is an office of attorneys. They are smart enough to not fire him immediately after he made his complaint. These cases are built on circumstance, inference, and Mr. Klaus deserves his day in court in front of a jury of his peers, Your Honors. Thank you. Okay, thank you both for your argument in this matter. This matter will stand submitted.
judges: SCHROEDER, CALLAHAN, BEA